IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| RICK D. RENNER, | ) | 4:06CV3212 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

In this social security appeal, the plaintiff, Rick D. Renner, contends that an administrative law judge erred by failing to give proper weight to the opinion of his treating physician, by failing to make a proper credibility assessment, and by relying upon a vocational expert's opinion that a person in Renner's position could work as a cashier. I will reverse the commissioner's determination that Renner is not disabled and will remand the case for further proceedings.

## I. BACKGROUND

Renner applied for disability insurance benefits on January 5, 2004, when he was 50 years old, alleging that he became disabled on October 16, 1999, due to knee injuries. He was found "not disabled" on January 23, 2004, and that finding was reaffirmed on February 27, 2004, after reconsideration.

At Renner's request, an administrative hearing was held on April 5, 2005, at which time the alleged onset date of Renner's disability was amended to July 29, 2003. Testimony was provided by Renner, who was represented by counsel, and by a vocational expert ("VE") under contract with the agency. The administrative law judge ("ALJ") issued an adverse decision on August 11, 2005. On July 14, 2006, the Appeals Council denied Renner's request for further review.

This action was timely filed on September 11, 2006. Briefing of the appeal was completed on February 22, 2007, and the matter is now ripe for decision.

### A.  Findings by the ALJ

The ALJ evaluated Renner's claims according to the five-step sequential analysis prescribed by the social security regulations.  See 20 C.F.R. § 404.1520. Among other things, he found that (1) Renner has not engaged in any substantial gainful activity since July 29, 2003; (2) Renner has osteoarthritis of the left knee; (3) that while this impairment is "severe" under the regulations, it does not meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) that Renner lacks the residual functional capacity ("RFC") to return to his past relevant work as a route driver, livestock farmer, or field reporter; and (5) that Renner retains the capacity to perform the unskilled, light occupation of cashier with a sit-stand option that does not require more than 2 hours of standing.

### B.  Issues on Appeal

Renner requests that the Commissioner's decision be reversed and the case remanded for payment of benefits because:

1. The ALJ failed to accept as controlling the limitations placed on Renner by his treating physician, Stephen R. Smith, M.D., pursuant to Social Security Ruling (SSR) 96-2p, or to otherwise give proper weight to Dr. Smith's opinions pursuant to 20 C.F.R. § 404.1527(d).

2. The ALJ failed to assess the credibility of Renner's testimony in accordance with Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1994), SSR 96-7p, and 20 C.F.R. § 404.1529.

3. The ALJ erred in accepting a VE's testimony which contradicted the definition of "light work" in SSR 83-10.

2

## II.  DISCUSSION

A denial of benefits by the Commissioner is reviewed to determine whether the denial is supported by substantial evidence on the record as a whole.  Hogan v. Apfel, 239 F.3d 958, 960 (8th Cir. 2001).  "Substantial evidence" is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.  Id., at 960-61; Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000).  Evidence that both supports and detracts from the Commissioner's decision must be considered, but the decision may not be reversed merely because substantial evidence supports a contrary outcome.  See Moad v. Massanari, 260 F.3d 887, 890 (8th Cir. 2001).

This court must also review the decision of the Commissioner to decide whether the proper legal standard was applied in reaching the result.  Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992).  Issues of law are reviewed de novo. Olson v. Apfel, 170 F.3d 820, 822 (8th Cir. 1999); Boock v. Shalala, 48 F.3d 348, 351 n.2 (8th Cir. 1995); Smith, 982 F.2d at 311.

### A.  Step Four – RFC Determination

"The RFC is used at both step four and five of the evaluation process, but it is determined at step four, where the burden of proof rests with the claimant."  Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005).  "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations."  Id. (internal quotations and citations omitted).

Relevant evidence in this case consists of:  (1) medical records from Renner's treating orthopedist, Stephen R. Smith, M.D., from March 25, 2002, to March 2, 2005; (2) Dr. Smith's responses to "medical impairment evaluation" questionnaires

from Renner's attorney, dated April 9, 2004 (Exhibit 5F), and January 28, 2005 (Exhibit 7F, pp. 2-4); (3) Dr. Smith's responses to a "physical capacities evaluation" checklist from Renner's attorney, dated January 25, 2005 (Exhibit 7F, pp. 5-7); (4) a report letter dated January 2, 2004, from Michael T. O'Neil, M.D., regarding his examination of Renner in connection with a workers' compensation claim for an October 1999 work-related injury to the left knee;  (5) a physical RFC assessment prepared following a record review by a state agency medical consultant, Glen D. Knosp, M.D., on January 23, 2004 (Exhibit 3F), and affirmed as written by another state agency medical consultant, Tom Chael, M.D., on February 26, 2004 (Exhibit 4F)[1]; and (6) Renner's own written submissions and hearing testimony.  Based upon this evidence, the ALJ found that:

> [Renner] could lift up to 20 pounds on occasion and 10 pounds on a frequent basis; he could lift no more than 10 pounds from the ground, but from knee level on up could lift the 20 pounds; he could sit for 6 hours in an 8 hour day and stand for 2 hours; he would need to alternate positions after 30 to 45 minutes of sitting to a standing position and then stand depending on whether it is free standing or whether he could lean on something up to 20 minutes and would then need to change; if in a sitting position, he would need to be able to extend his legs out in front of him; he could occasionally bend and stoop; he could not kneel, crawl, or crouch; he could not climb stairs, ladders, or scaffolds; he should not use his feet to operate foot controls; and he should not work around unprotected heights.

(Tr. 23.)

### 1. *Treating Physician's Opinion*

Renner, citing SSR 96-2p,[2] claims that the ALJ did not give sufficient weight

---

[1] These consulting physicians' RFC assessments were not mentioned by the ALJ and do not appear to have been relied upon by him.

[2] This Social Security Ruling emphasizes that:

to Dr. Smith's evaluation of his physical capacities as set forth in Exhibit 7F, but he
admits that the ALJ gave a detailed description of the exhibit, as follows:

> Dr. Smith completed a Physical Capacities Evaluation checklist report
> on January 25, 2005, in which he indicated that, in an 8 hour work day,
> the Claimant would have a maximum work day of 8 hours; he could sit
> for 8 hours; and he could not do any standing or walking. He indicated
> that the Claimant could seldom lift up to 50 pounds and frequently lift
> up to 20 pounds; he could occasionally carry up to 20 pounds and
> frequently carry up to 10 pounds; he can use his hands for repetitive
> actions such as frequently reaching in all directions with both hands,
> grasping and handling with both hands, and performing fine

---

1.  A case cannot be decided in reliance on a medical opinion
without some reasonable support for the opinion.

2.  Controlling weight may be given only in appropriate
circumstances to medical opinions, i.e., opinions on the issue(s) of the
nature and severity of an individual's impairment(s), from treating
sources.

3.  Controlling weight may not be given to a treating source's
medical opinion unless the opinion is well-supported by medically
acceptable clinical and laboratory diagnostic techniques.

4.  Even if a treating source's medical opinion is well-supported,
controlling weight may not be given to the opinion unless it also is "not
inconsistent" with the other substantial evidence in the case record.

5.  The judgment whether a treating source's medical opinion is
well-supported and not inconsistent with the other substantial evidence
in the case record requires an understanding of the clinical signs and
laboratory findings and what they signify.

6.  If a treating source's medical opinion is well-supported and
not inconsistent with the other substantial evidence in the case record,
it must be given controlling weight; i.e., it must be adopted.

7.  A finding that a treating source's medical opinion is not
entitled to controlling weight does not mean that the opinion is rejected.
It may still be entitled to deference and be adopted by the adjudicator.

SSR 96-2p, 1996 WL 374188 at *1 (S.S.A., July 2, 1996).

manipulations with both hands; he could frequently use his right foot for foot controls and occasionally use his left foot and both feet for foot controls; he could frequently bend but could never squat, crawl or climb; the Claimant can never work at unprotected heights, but could frequently work around moving machinery and automotive equipment; he can frequently work exposed to dust, fumes and gases; to accomplish the foregoing, he would need to work at only a slow pace; the Claimant would need to walk around and leave a work station other than a scheduled break every 30 minutes for 5 to 10 minutes; he would need to shift from sitting, standing or walking at will and other than at a scheduled break "frequently 1 hr – 30 mins"; and he indicated no need for the Claimant to elevate his legs or to lie down during a work shift. Dr. Smith indicated that the Claimant has a maximum workload of 4 days per week. (Exhibit 7F/5-7)

. . .

On January 28, 2005, Dr. Smith completed a Medical Impairment Evaluation questionnaire in which he reported that the Claimant has "disabling" arthritis in his left knee of ongoing duration; and "disabling" arthritis in his right knee with an onset of 1995 and duration of "1995". He indicated that the Claimant's condition causes him to be unable to perform his previous job or some other similar work; performance of his former job or other similar work would cause an increase in left knee pain and effusion; extended walking and standing cause increased pain and effusion in the left knee; the Claimant's prescribed medication is Celebrex, which gave an "80%" degree of effectiveness; treatment is available for the Claimant's impairment, and he is "currently on sodium hyaluronic acid synvisc injections L knee" every six months and Cortisone to decrease pain; the Claimant's medical condition has not improved since he first began treating him; his medical condition has not improved since the impairment or condition first developed; the Claimant's prognosis is fair; he is not a malingerer; and the Claimant's experience of pain is sufficiently severe as to often interfere with attention and concentration. He described the Claimant's symptoms as consisting of left knee pain, instability, catching and intermittent swelling increased with any standing and walking activities, and sometimes pain at sleep. Dr. Smith identified the Claimant's "signs" as

> increased varus deformity of the left knee, crepitus with left knee range
> f motion, and medial/lateral instability of left knee.  He reported that
> x-rays showed narrowing of the medial compartment because of loss of
> articular cartilage.  (Exhibit 7F)

(Tr. 16)

A treating physician's opinion is generally entitled to substantial weight, see Burress v. Apfel, 141 F.3d 875, 880 (8th Cir. 1998), and must be accorded controlling weight under the regulations if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."  20 C.F.R. § 404.1527(d)(2).  The Commissioner's regulations also require "that the adjudicator will always give good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s), i.e., an opinion(s) on the nature and severity of an individual's impairment(s)."  SSR 96-2p, 1996 WL 374188 at *5.  See Holmstrom v. Massanari, 270 F.3d 715, 720 (8th Cir. 2001) ("Whether the weight accorded the treating physician's opinion by the ALJ is great or small, the ALJ must give good reasons for that weighting."); Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000) ("[W]hether the ALJ grants a treating physician's opinion substantial or little weight, the regulations also provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation."); Prosch, 201 F.3d at 1013 (same).

The ALJ in this case stated that "[s]ignificant weight is not given to Dr. Smith's assessments that the Claimant is 'disabled'." [3]  (Tr. 22.)  He explained that:

> Dr. Smith's statements that the Claimant has not shown improvement
> since he first began treating the Claimant (Exhibit 5F/2 and 7F/3) are

---

[3] A medical source opinion that an applicant is "disabled" involves an issue reserved for the Commissioner and therefore is not the type of "medical opinion" to which the Commissioner gives controlling weight.  Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005).

not consistent with his own progress notes which clearly indicate improvement with treatment (Exhibit 1F/3 and Exhibit 8F/4,8,12,20) as well as Dr. Smith's assessments, noted earlier, that Celebrex has been up to 90 percent effective in treating the Claimant's symptomatology. (Tr. 22.)

Dr. Smith has also made somewhat conflicting statements in his reports. For instance, he reported that the Claimant can do no standing or walking at all in an 8 hour day (Exhibit 7F/5); however, in the same report, he indicated that the Claimant would need to walk around for 5 to 10 minutes every 30 minutes in a work setting (Exhibit 7F/6), which would seem to translate to an ability to stand and walk for more than 2-½ hours in a work day and would thus not preclude the performance of a "light" level of exertion as described in the Regulations.[4]  This finding also appears to be supported by Dr. Smith's notation in the same exhibit (Exhibit 7F/3) in which he qualified the restriction to "extended" walking and standing.

In addition, Dr. Smith's assessments that the Claimant's experience of pain is of sufficient severity to often/frequently interfere with attention and concentration (Exhibits 7F/3 and 5F/2, respectively) appear to be inconsistent with his reported 80% to 90% effectiveness of the Claimant's prescribed mediation in relieving pain; and as noted earlier, it does not appear from Dr. Smith's progress notes that the Claimant has ever complained of having any problems with attention or concentration.

(Tr. 22.)

The ALJ adequately discussed Dr. Smith's opinions that Renner's pain would often interfere with his ability to concentrate and that he could not stand or walk while working, but other opinions were rejected without comment.  For example, there is no discussion of Dr. Smith's opinions that Renner would need to work at a

---

[4] As will be discussed later in this opinion, a job at the "light" exertional level generally entails standing or walking for 6 hours each workday.  The ALJ's statement is thus incorrect as a matter of law.  He is actually describing "sedentary" work.

slow pace and could only work 4 days per week. Also, the sit/stand option that the ALJ incorporated into Renner's RFC differs significantly from Dr. Smith's checklist response that Renner would need to leave his work station and walk around for 5 to 10 minutes every half-hour.[5]

There may be good reasons for the ALJ to have discounted or rejected these opinions of Dr. Smith regarding Renner's ability to function in the workplace,[6] but he failed to articulate any, except to make a general observation that Dr. Smith had

---

[5] The vocational expert testified on cross-examination that such a restriction would eliminate cashier or phone solicitor jobs from consideration at step five. (Tr. 243-44.) Because these were the only two occupations that the vocational expert identified as being suitable for a person with Renner's RFC, age, education, and past work history, the ALJ's "no disability" determination would not be supported by substantial evidence if the restriction is valid. See Grissom v. Barnhart, 416 F.3d 834, 837 (8th Cir. 2005) ("Testimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question.").

[6] A treating physician's use of a checklist to render medical opinions in social security cases is generally acceptable. See Reed v. Barnhart, 399 F.3d 917, 921 (8th Cir. 2005) (The Court of Appeals has "never upheld a decision to discount [a medical source statement] on the basis that the 'evaluation by box category' is deficient ipso facto."). However, such reports do have their limitations. For example, the Eighth Circuit has upheld an ALJ's decision to discount a treating physician's "medical source statement" (MSS) where the severe limitations listed on the form "stand alone," and were "never mentioned in [the physician's] numerous records of treatment" nor supported by "any objective testing or reasoning which would indicate why the claimant's functioning need be so restricted." See Hogan, 239 F.3d at 961. See also Ellis, 392 F.3d at 995 (ALJ properly discounted treating physician's opinion that claimant, who admittedly had chronic hip and back pain, could only stand for 2 hours and sit for 4 hours, and do neither for more than 1 hour at a time, where medical records did not show that the doctor ever ordered or even suggested to claimant that he limit the time that he stood or sat); Strongson v. Barnhart, 361 F.3d 1066, 1071 (8th Cir. 2004) (affirming the ALJ's decision to give little weight to MSS where the completing physician's opinion was "without explanation or support from clinical findings" and "not internally consistent with [his] own treatment notations").

9

reported that Celebrex was 80 to 90 percent effective.  The ALJ inferred from this report that the degree of Renner's pain, on a scale of 1 to 10, will never exceed "2" while he is taking this medication.[7]  (Tr. 20.)  This conclusion is so far at odds with the remainder of Dr. Smith's reports that it seems unlikely to be true.  Moreover, when one looks at the reports, it can be seen that the percentage figures used by Dr. Smith related to the effectiveness of Celebrex strictly as an anti-inflammatory drug, not as an analgesic.[8]  (Tr. 173, 179.)

"While a 'deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case,' inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand."  Draper v. Barnhart, 425 F.3d 1127, 1130 (8th Cir. 2005) (quoting Reeder v. Apfel, 214 F.3d 984, 988 (8th Cir. 2000)).  Also, "the ALJ may not silently disregard" the procedures that the Commissioner has established for evaluating physicians' opinions under 20 C.F.R. § 404.1527(d)(2). See Brueggemann v. Barnhart, 348 F.3d 689, 694 (8th Cir. 2003).  The failure by the ALJ in this case to address each opinion of Renner's treating physician necessitates a remand.

## 2. Claimant's Credibility

To assess a claimant's credibility, the ALJ must consider all of the evidence, including prior work records and observations by third parties and doctors regarding daily activities, the duration, frequency, and intensity of pain, precipitating and aggravating factors, the dosage, effectiveness, and side effects of medication, and

---

[7] In addition to taking 200 milligrams of Celebrex twice daily, Renner regularly receives injections of cortisone, sodium hyaluronic acid, and Synvix in his left knee.

[8] The form used to make the report is also confusing, in that the space provided for listing drugs (in table form) is preceded by a request that the doctor "describe any incidents in the claimant's previous medical history which relate to the claimant's present condition(s) or impairment(s), e.g., types of surgery, etc:"  (Tr. 173.)

functional restrictions.  Lowe v. Apfel, 226 F.3d 969, 971-72 (8th Cir. 2000) (citing Polaski).  The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole.  Id. at 972.  Where adequately explained and supported, credibility findings are for the ALJ to make.  Id. (citing Tang v. Apfel, 205 F.3d 1084, 1087 (8th Cir.2000)).

The ALJ is not required to discuss methodically each Polaski consideration, so long as he acknowledges and examines those considerations before discounting the subjective complaints.  Id. (citing Brown v. Chater, 87 F.3d 963, 966 (8th Cir.1996)).  Even so, the ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints.  Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004).  It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence.  Id. at 738-39.

The ALJ's decision in this case cites Polaski and quotes from 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p.[9]  The ALJ also provided a detailed description of Renner's testimony and explained that he did not find it credible because of several inconsistencies, which were then discussed by the ALJ.[10]  Without

---

[9]  Among other things, this ruling states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p, 1996 WL 374186, at *2 (S.S.A., July 2, 1996).

[10]  Basically, the ALJ found that Renner was not credible because:  (1) Renner testified that he needs to recline with his legs elevated during most of the day, which was not mentioned in Dr. Smith's progress notes or reports, and was not mentioned by Renner previously when describing his average daily activities;  (2) the level of Renner's daily activities shows that he has a greater residual functional capacity than

going into detail, I conclude that the ALJ considered all of the evidence relevant Renner's complaints of pain under the <u>Polaski</u> standards, and that he made a reasoned credibility determination.  I find no reversible error in this regard.

### B.  *Step Five – Vocational Expert's Opinion*

In response to the ALJ's hypothetical question, the VE testified that a person of the same age as Renner, and having the same residual functional capacity, education, and work history, could work either as a cashier or as a phone solicitor. (Tr. 240-241.)  The cashier job involves unskilled, "light" work,[11] while the phone solicitor occupation is classified as semi-skilled and "sedentary".[12]  (<u>Id.</u>)

_____

alleged; (3) Renner's pain is controlled by medication; and (4) Renner's discharge from his last employment on July 29, 2003, was not related to his medical condition, and he received unemployment compensation benefits from August 2003 to January 2004; and (5) Renner sat upright for an hour at the administrative hearing and "did not seem too uncomfortable," even though he testified that he could only sit 15 to 30 minutes at a time before needing to shift positions and stand up.  (Tr. 21-22.)

[11] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b).

[12] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

12

It is undisputed that Renner can only perform weightlifting at the "light" exertional level (i.e., "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).).  It is also undisputed that Renner cannot perform a full range of light work.[13]  The dispute regarding the cashier position is that the ALJ's hypothetical question required the VE to assume that the person "[c]ould sit for 6 hours, in an 8 hour day, could stand for 2 hours, and would need to alternate positions . . .."  (Tr. 238.)

"The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing—the primary difference between sedentary and most light jobs.  A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls,[14] which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances).  Relatively few unskilled light jobs are performed in a seated position.  SSR 83-10, 983 WL 31251, *5 (S.S.A., 1983) (emphasis supplied).  "'Frequent' means occurring from one-third to two-thirds of the time.  Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.  Sitting may occur intermittently during the remaining time."  Id., at *6.

---

[13] The ALJ noted that if Renner "possessed the residual functional capacity for the 'full range' of light work, he could not be found disabled pursuant to Rule 202.14, Table No. 2 to Subpart P of the Social Security Administration's Regulations No. 4." (Tr. 24.)

[14] The ALJ found that Renner "should not use his feet to operate foot controls." (Tr. 23.)

The VE testified that there are 43,650 "light" cashier jobs in Nebraska, Iowa, Missouri, and Kansas, about half of which can be performed by someone who needs to alternate between standing and sitting.  (Tr. 240-241.)[15]  On cross-examination he also testified that these 20,000 to 21,000 cashier jobs would not entail more than 2 hours of standing.  (Tr. 248.)  The VE admitted, however, that his testimony in this regard conflicted with the definition of "light" work, which generally involves at least 6 hours of standing.  (Tr. 249)  Despite this admission, the ALJ relied upon the VE's testimony to find that Renner is not disabled.  (Tr. 24.)

Absent a reasonable explanation by the VE as to why half of the unskilled cashier jobs in this region that the United States Department of Labor calls "light" should really be classified as "sedentary", there is no basis for the ALJ to have relied upon the VE's testimony.  See SSR 00-4p, 2000 WL 1898704, *2 (S.S.A. Dec. 4, 2000) ("Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT ["Dictionary of Occupational Titles" published by the United States Department of Labor].  When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled."); Jones ex rel. Morris v. Barnhart, 315 F.3d 974, 979 (8th Cir. 2003) ("[A]n ALJ cannot rely on expert testimony that conflicts with the job classifications in the DOT unless there is evidence in the record to rebut those classifications, . . .."); Porch v. Chater, 115 F.3d 567, 572 (8th Cir. 1997) (When expert testimony conflicts with the DOT, and the DOT classifications are not rebutted, the DOT controls.").  In this case the VE did not offer any explanation for his testimony, and the ALJ did not make any inquiry.  Because the VE's testimony cannot be reconciled with the DOT classification, the ALJ's decision is not supported by substantial evidence.

_____

[15] Although the VE neglected to include Iowa in the "forth [sic] state area" (Tr. 240), this omission was supplied by the ALJ.  (Tr. 24,)

The VE also testified that there are 25,458 phone solicitor (telemarketer) jobs in the four-state area, which have a specific vocational preparation (SVP) level of 3 (semi-skilled).[16] (Tr. 241.) The VE acknowledged that Renner's employment history did not provide any transferable skills for working as a phone solicitor (Tr. 246),[17] but he opined that people with a high school education are capable of entering directly into semi-skilled employment such as this. (Tr. 243.) In response to questioning from Renner's attorney, the VE said he disagreed with the DOT's assessment that between 30 and 90 days' training is required. (Id.) The record reflects that the ALJ did ask the VE for an explanation of this statement:

> Q      Let's back up just a little bit. You'd indicated that you did
> not agree with the DOT, with regard to the training on the –
> A      SVP 3?
> Q      Right.
> A      Correct, no 3 is – 3 basically is entry level work, and if a
> person has a high school education, they should be able to jump right in

---

[16] An SVP 3 position typically requires more than 1 month, and up to 3 months, of specific vocational training. See Appendix C to the United States Department of Labor's Dictionary of Occupational Titles (DOT) (4th ed.1991). "A skill is knowledge of a work activity that requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation that is above the unskilled level (requires more than 30 days to learn). (See SSR 82-41.) Skills are acquired in PRW [past relevant work] and may also be learned in recent education that provides for direct entry into skilled work." SSR 00-4p, 2000 WL 1898704 at *3. "The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR §§ 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." Id.

[17] "Ability to perform skilled or semiskilled work depends on the presence of acquired skills which may be transferred to such work from past job experience above the unskilled level or the presence of recently completed education which allows for direct entry into skilled or semiskilled work." SSR 83-10, 1983 WL 31251, *3 (S.S.A. 1983).

to it, with just minimal training, like a few hours.  However, the DOT says that for, for a SVP 3, they would have to have 3 – it would take 3 months to orient them.

      Q     So that perhaps, the telephone solicitor, the actuality of it, that you seen performed.  How long does it take to teach somebody to be a phone solicitor?

      A     Probably, half hour, most people.  If they have reading problems, it might be different, but most people can learn it very quickly.

(Tr. 244-245.)  Renner's attorney then followed up with some additional questions:

      Q     So you are – you're treating the telephone solicitation job as truly, for a person with a high school education, and [sic] a SVP 1 or 2?

      A     I am treating it as a person with a high school education and if it was up to a SVP 4, or even 5, I think they would be able to do it? But definitely, 1 or 2, yes.

      Q     Well, wait a minute?

      A     Okay a 3, a 3 is definitely entry level.  If a person has a high school education, they should be able to jump into almost all 3.

      Q     All three?

      A     Um-hum.

      Q     And so for a person – you consider for a person with a high school education there isn't – those only minimal adjustment necessary, which makes it the equivalent of a SVP 1 or 2, for them?

      A     It makes it – I don't want to say it makes it equivalent to a SVP 1, or 2.  But it makes it, assessable [sic] to them at entry level.  I'm saying they're capable of doing all 3.

      . . .

      A     A telephone solicitor should be enter right away with a high school education.

      . . .

      Q     Okay, and you're saying, that a high school education will allow somebody to do most SVP 3 work, with minimal adjustment, in less than 30 days?

      A     Yes.  Unless there were special circumstances, like a reading disability, or something like that, yes.

. . .
Q      Okay.  But it isn't transferable skills, it's the educational background?
A      It's the educational background, correct.

(Tr. 246-248.)

The ALJ did not rely on the VE's testimony regarding phone solicitor jobs, but neither did he expressly reject such testimony.  Because the issue may come up again on remand, I offer the following comments.  Essentially, the VE testified that even though the phone solicitor occupation is classified in the DOT at the SVP 3 level, the work can be performed by a person with a high school education after only a half-hour's training.[18]  More generally, he testified that a high school graduate should be able to "jump into" most any semi-skilled position.  Such testimony is entitled to no consideration because it confuses job training requirements with educational requirements and attempts to change the meaning of "semi-skilled" work.  See SSR 00-4p, 2000 WL 1898704 at *3 ("Although there may be a reason for classifying an occupation's skill level differently than in the DOT, the regulatory definitions of skill levels are controlling.  For example, VE or VS evidence may not be relied upon to establish that unskilled work involves complex duties that take many months to learn, because that is inconsistent with the regulatory definition of unskilled work.").  Stated somewhat differently, this case does not involve "an evidentiary conflict between the VE and the DOT," but, rather, "a legal conflict between the VE and the SSA over the definition of a regulatory term, and the VE's testimony cannot prevail."  Steward v. Barnhart, 44 Fed. Appx. 151, 152-53, 2002 WL 1791513, *1 (9th Cir. Aug. 5, 2002)

---

[18] The same VE provided similar testimony in another case that was before me several months ago, which led to the ALJ's decision being reversed.  See Flesner v. Barnhart, No. 4:06CV3010, slip op. at 16-19 (Aug. 31, 2006) (VE agreed with the ALJ that the SVP 3 level "would not normally bother anybody with a high school education" and testified that although the phone solicitor job is rated SVP 3, "[i]n practice we see some high school kids doing telephone soliciting on a part-time basis . . . [and] some people without a high school education doing phone soliciting."),

(unpublished) (VE's testimony that claimant could perform certain occupations because they were entry-level and required no transferable skills was inconsistent with the regulatory definitions of "SVP 3" and "semi-skilled").

### III. CONCLUSION

For the reasons stated, I find that the Commissioner's decision is not supported by substantial evidence on the record as a whole and is contrary to law.

Accordingly,

IT IS ORDERED that the decision of the Commissioner is reversed, and the cause is remanded for (1) a proper step-4 determination of Renner's ability to function in the workplace, including a proper assessment of all opinions provided by Renner's treating physician, Stephen R. Smith, M.D., and (2) a proper step-5 determination of whether Renner's impairments prevent him from working. Judgment will be entered by separate document.

April 9, 2007.                                    BY THE COURT:

                                                  s/ *Richard G. Kopf*
                                                  United States District Judge